EDWARD RAZE, Plaintiff-Appellant, v. ST. LOUIS SOUTHWESTERN RAILWAY COMPANY, a Corporation, Defendant-Respondent, No. 41536 —227 S. W. (2d) 687.

Division Two, March 13, 1950.

Mortimer A. Rosecan and Drew W. Luten, Jr., for appellant.

224

*Wayne Ely, Robert C. Ely* and *Ernest D. Grinnell, Jr.,* for respondent; *John W. Murphy* of counsel.

ELLISON, P. J.—The plaintiff appeals from an adverse judgment of the circuit court of the City of St. Louis, in this suit under the Federal Employers' Liability Act for $95,000 damages for personal injuries allegedly sustained in respondent's Florida Street freight yard in St. Louis, while stowing interstate freight for shipment in a standing box car. There were 10 level and parallel tracks in the yard feeding off of a lead track. The car involved was on No. 8. At least one other car was on that track and there may have been still others, loose or coupled, on that and other tracks. When the outgoing cars were loaded and ready for shipment the respondent's yard clerk would furnish a switch list to the Terminal Railroad Association switching crew, and the latter's switch engine would be notified to come in and remove the loaded cars and make them into trains. Respondent's employees customarily would give ample notice to the "stowmen" inside the cars of these incursions and movements.

The appellant testified that while he was moving a "rack" [to separate or stabilize freight] in the car he was in, the car gave a sudden and violent jerk, causing him to fall and the rack to bruise his foot and produce the ultimate injuries for which he sued. He did not know whence the violence came, but when he got up and went to ▮ the car door he saw a Terminal switch engine, either on track 8 or the lead track, from 105 to 200 feet away. Whether it was moving or standing he did not say. Such rough handling had occurred only five or six times during the 18 years appellant had worked for respondent, but never so violently before.

Being ignorant of the true cause of the casualty appellant based his suit on the doctrine of res ipsa loquitur. At the close of appellant's case in chief and before submission of the cause to the jury, the trial court sustained the respondent's motion for a directed verdict on two grounds: (1) there was no evidence to support the allegation in his petition that the freight car was moved, jerked or jolted by respondent or by any instrumentality under its control; (2) that the evidence was insufficient to prove reasonably and circumstantially that the car was moved, jerked or jolted by any instrumentality operated or controlled by respondent.

Thereupon, the court permitted appellant to introduce further evidence in the form of a transcript of the testimony of two witnesses at a prior trial of the cause. One of these said that at the end of each day [or the close of the "house", in railroad parlance] the ware-

house foreman would notify the yard clerk that the outgoing cars were closed and sealed, and the yard clerk in turn would notify the Terminal Railroad switch crew that they could go to work. It was the duty of the warehouse foreman to get the "stowmen" out of the cars. The other witness, J. L. Windley, said the appellant would make out a switch list for the cars on each of 10 or 12 tracks in the yard, showing what position each car was to occupy in each group or train. Then he stated that when the Terminal engine and crew came in "they were acting for the" respondent railroad. Notwithstanding this additional evidence the trial court adhered to its previous ruling, as stated in the last preceding paragraph.

In discussion the court explained to counsel the theory it had adopted in sustaining respondent's motion for a directed verdict. The court pointed out that under McCloskey v. Koplar, 329 Mo. 527, 533(2), 46 SW. (2d) 557, 559(2), 92 A. L. R. 641, and many other cases the doctrine of res ipsa loquitur does not apply unless the instrumentalities involved were under the management and control of the defendant, or the latter had the right of control. And the court took the view that in the instant case there was no substantial evidence showing the respondent railroad had any control of or right to control the instrumentalities which caused the box car to jerk, including the switching operations of the Terminal Railroad switching crew.

On the other hand appellant urges (as is true) that his last witness, Windley, testified categorically that the Terminal switch crew *were acting for* the respondent railroad and therefore were under its control even though they had some discretion in making the switching movements. In addition to that appellant's testimony shows he was inside the freight car and did not know what caused the car to jerk or jolt. Shortly afterward he looked out and saw a Terminal switch engine 105 to 200 feet away on the same track or another track, but did not know or say whether it was moving or standing still. There was at least one other freight car, and may have been others, on the same track as the car he was in. Whether their brakes were set is not shown. But if the house tracks were level, as some testimony showed, it seems the cars would not move independently anyway.

Nevertheless, if the appellant's testimony is to be credited at all, the standing car he was in did give a violent jerk which caused the rack to fall on his foot. The Terminal switch crew and switch engine may or may not have caused it. Or it may have been the result of something done by someone else, or of some force that has not been explained. And yet the respondent railroad admittedly was in control of the yards. This conclusion, it seems to us, would make the doctrine of res ipsa loquitur applicable to the case unless we hold appellant's testimony was incredible—and in the opinion of the writer we cannot do that. In other words, the weight and credibility of ap-

pellant's necessarily vague testimony would be for the jury's determination.

On that point appellant's counsel stress the fact that since this suit is based on The Federal Employers' Liability Act, the rather liberal decisions of the Federal courts are controlling on our state courts, or at least should be deferred to largely in determining what constitutes substantial evidence making a case under that statute on the res ipsa loquitur theory. They refer to several decisions set out next below, and such seems to be the rule. In particular see the discussion in the Tatum case last cited with reference to the bearing and weight of the Federal decisions on this court. Cantley v. M-K-T Rd. Co., 353 Mo. 605, 613 (4), 183 SW. (2d) 123, 127 (5-6); Maxie v. G., M. & O. Rd. Co., 356 Mo. 633, 645(3), 202 SW. (2d) 904, 911 (5, 6); idem (Div. 1), 358 Mo. 1100, 219 SW. (2d) 322, 324-5(3, 4); Tatum v. G., M. & O. Rd. Co. (Div. 2), 359 Mo. 709, 223 SW. (2d) 418, 421-3(1).

This disposes of all the defensive contentions made by respondent except one. That contention is made for the first time in *this* court and is as follows: "If plaintiff's recovery must be based upon the theory that the Terminal Railroad Association was the agent of defendant, then his cause of action is barred by the doctrine of *res adjudicata.*" As will be explained, the res judicata rule here invoked by respondent is a kind of constructive doctrine founded on Secs. 99 and 101 of the Civil Code, Laws Mo. 1943, pp. 384-385, Secs. 847-99-847.101, Mo. R. S. A.

And it arises out of these facts. When appellant's petition in the instant suit was filed in the circuit court the Terminal Railroad Association was impleaded as a co-defendant with the respondent, and *both* were charged to have been in control and operation of the box car involved, and with joint negligence. During the trial of this cause by leave of court and without objection by respondent, so far as the record shows, appellant dismissed the instant suit as to the *Terminal*, and proceeded thenceforward against the respondent alone. There was no record recital as to whether the dismissal of the Terminal was without prejudice. The trial resulted in a judgment on the merits in favor of respondent.

Now, here on this appeal for the first time respondent raises the point that in 1946, two years before the trial of the instant case, appellant had brought another similar suit on the same cause of action in the same court against the same two defendants, and during the trial thereof had dismissed the same as to both defendants without prejudice. These facts were not proven below in the trial of this case, but are brought directly to this court by a certified transcript of the dismissal proceeding in the former case.

On that basis respondent invokes Secs. 99 and 101 of the Civil Code, supra. The former provides that a plaintiff who has once dis-

missed his action without prejudice and thereafter files another action upon the same claim, shall not be allowed to dismiss the second action without prejudice after the jury has been empanelled [as it had been here] except by stipulation with the opposing party, or by court order made on special motion. And Sec. 101 provides "a dismissal with prejudice operates as an adjudication upon the merits. Any voluntary dismissal other than one which the party is entitled to take without prejudice * * shall be with prejudice unless the court in its order for dismissal shall otherwise specify." There was no such stipulation or order below in this case as to the dismissal of the Terminal.

Respondent's excuse, or explanation, for attempting to inject the res judicata issue here on appeal for the first time, instead of in the trial court, is that it had no "official" notice appellant would claim the Terminal was respondent's *agent* [in the switching operations] until it [respondent] was served with appellant's brief on this appeal. But this is hard to understand in view of the transcript testimony of the witness Windley in the trial record in this case expressly stating that the Terminal switching crew "*were acting* for" respondent in switching the cars out of respondent's yard.

The legal theory on which respondent attempts to make this res judicata contention applicable is as follows. *If* the Terminal was an agent of the respondent railroad in switching the freight cars and making up the train, then a relation of master and servant or principal and agent existed between the two. And *if* the liability of the respondent derives *solely* through the misfeasance of its said agent and servant [the Terminal] then when appellant dismissed its instant [second] suit against the Terminal, the result was to discharge also its co-defendant the respondent, whose liability was only secondary, under the doctrine of respondeat superior, as long since held in a line of cases headed by McGinnis v. C., R. I. & P. Ry. Co., 200 Mo. 347, 358(4), 98 SW. 590, 592(2), 118 A. S. R. 661, 9 L. R. A. (N. S.) 880.

It may be respondent's contention is well taken that far, for appellant did dismiss both his first and second suits against the Terminal, and under Secs. 99 and 101, supra, the second dismissal operated with prejudice, in the absence of anything to the contrary in the trial court's order—and there was nothing to the contrary. On this point respondent cites Hannibal v. St. L. Public Service Co. (Mo. App.) 200 SW. (2d) 568, 570(1). See also Jones v. Williams, 357 Mo. 531, 536(3), 209 SW. (2d) 907, 911(11).

But this does not dispose of the matter. For respondent still remained in the case as sole defendant. There had been only one dismissal as to it. Potter v. McLin (Mo. App.) 214 SW. (2d) 751, 753(3). And we are not convinced from the record that the Terminal was the sole actor in the matter. The respondent was still

dutybound to see that the stowmen in its own yard were out of the cars. And it had a duty to perform in protecting them. Stokes v. Wabash Rd. Co., 355 Mo. 602, 609(9), 197 SW. (2d) 304, 308(7). And not only that. The appellant's evidence plainly established [if believed] that there was a sudden and violent movement of the freight car in which he was at work. He did not and could not know what caused it. A few minutes later he saw a Terminal railroad engine in the yard some distance away, but the evidence is not at all conclusive that this engine did or had moved and caused the violent jarring of the freight car. It could have been some other agency or force. And in addition to all that the contention now made by respondent is presented here on appeal for the first time and was not made in the trial court. Bindley v. Met. Life Ins. Co. (Div. 1) 358 Mo. 31, 213 SW. (2d) 387, 391(8).

For the reasons stated we think the judgment should be reversed and the cause remanded. All concur.