### STEPHENSON v. STEINHAUER.

No. 14233.

United States Court of Appeals
Eighth Circuit.

April 18, 1951.

---

1. Nims on Unfair Competition & Trade Marks, p. 1188, Section 373(g). See also

Broderick & Bascom Rope Co. v. Manoff, 6 Cir., 41 F.2d 353.

434

J. K. Murray, William S. Murray, Bismarck, N. D., and Robert Wallin, Hettinger, N. D., on brief for appellant.

H. R. Jackson, Lemmon, S. D. (C. F. Kelsch, Mandan, N. D., was with him on the brief), for appellee.

Before GARDNER, Chief Judge, and THOMAS and RIDDICK, Circuit Judges.

GARDNER, Chief Judge.

This appeal is from a judgment in favor of appellee for damages on account of personal injuries suffered by her as the result of a collision between a pick-up truck in which she was riding with her husband, and a truck owned and driven by appellant. We shall refer to appellee as plaintiff and to appellant as defendant.

The pleadings have not been printed in the record but it is recited that plaintiff's complaint alleged negligence on the part of the defendant and alleged personal injuries resulting therefrom, and asked for damages in the sum of $17,500.00. It is also recited that defendant's answer denied negligence and pleaded contributory negligence.

An action growing out of the same collision was brought by Arthur Steinhauer, plaintiff's husband, for personal injuries suffered by him and these two actions were consolidated for purpose of trial and tried together to the same jury. The jury found in favor of plaintiff and assessed her damage in the sum of $7,500.00, but in the action brought by her husband, Arthur Steinhauer, the jury returned a verdict as follows: "We, the Jury, find for the plaintiff, Arthur Steinhauer, and against the defendant, Glen Stephenson, and assess plaintiff's damages in the sum of $ None."

■ The jury having found the issues in favor of the plaintiff, we must view the evidence in the light most favorable to her, all conflicts in the evidence being resolved in her favor. So viewed the evidence may be summarized as follows:

The collision in which plaintiff suffered her injuries occurred on the afternoon of February 5, 1949, during a snowstorm. She and her husband resided on a ranch near Strool, South Dakota, and they had driven to Hettinger and Reeder, North Dakota, both places being about fifty miles distant from their ranch, for the purpose of purchasing necessary supplies. After making some purchases at Hettinger they drove on to Reeder to obtain further supplies, intending to proceed home along the county road leading south from Reeder to their ranch. There is a hard surface road between Reeder and Hettinger. Enroute between these towns plaintiff and her husband noticed that the wind was beginning to blow and to drift snow across the highway. There had been considerable snow that winter and travel had been difficult. They hastened with their shopping and started home from Reeder, hoping to arrive before the storm became severe, and as their home was south from Reeder they believed they might outrun the wind which was then blowing from the northwest. Leaving Reeder about one

o'clock in the afternoon they traveled southward on the main traveled, graveled county highway toward their home. When about a mile and a half on their way they found that although it was not yet snowing the wind was rising and the snow was blowing, affecting the visibility, and that the county road was not well cleared, a part of the way being opened through snow drifts only for one-way travel, that is the cut was not wide enough to permit two cars going in opposite directions to pass. In these circumstances they deemed it safer to return to Reeder rather than attempt to go the fifty miles to their ranch and accordingly they turned around and started back to Reeder. Just before turning around they had passed through a long snow drift through which the road had been opened only for one-way traffic, with snow banks on either side, and the wind was drifting snow from these banks across the road, severely limiting visibility. Plaintiff's husband, who was driving the car, on starting through the drift, put the car in low gear and turned on the lights. At that time he could see ahead about 100 feet through the drifting snow. He was traveling at about five miles an hour. About half way through the cut both plaintiff and her husband observed defendant's truck approaching them from the north at a distance of about 75 or 100 feet. Plaintiff's husband immediately stopped his pick-up truck, and observing that defendant's truck was not stopping, started to shift his car into reverse gear to back up and to absorb the shock in the event there was a collision. The cut in which the collision occurred was about a quarter of a mile long and the collision occurred about half way through it.

Defendant's truck did not stop, but pursued ahead until it crashed into the pick-up in which plaintiff was riding, pushing it back and damaging it substantially. There was evidence that defendant was driving at an estimated speed of from eight to ten miles an hour through the cut and that during much of the time when he was proceeding through the cut he could not see a foot ahead of his radiator and did not see the Steinhauer pick-up until he was within two feet of it. His headlights were not turned on. Defendant was familiar with the cut and the road, as he had plowed it out the night before. Defendant's witness Carr testified that he was with defendant while going through the cut and that although they could see nothing at all of the road ahead of the truck, defendant drove ahead between eight and ten miles an hour.

Plaintiff testified that her husband was driving very slowly and very carefully and that she had the utmost confidence in him as a driver; that they decided to return to Reeder because the storm appeared to be getting worse and the road was not in good condition. Arthur Steinhauer testified that, "After the accident Stephenson came to my room in Reeder and said, 'I am to blame for the accident. I was going too fast at the time.' "

At the time of the collision defendant was employed by the County of Adams, North Dakota, for the purpose of removing snow from the highways and he was taking a load of fuel oil for his snow-removing machinery. He owned the truck and the machinery to which he was taking the fuel oil. The equipment at the time was working for a farmer who was opening up some haystacks and he was taking the fuel oil out so that the equipment could be taken back into town for use during blizzards. Other facts will be developed during the course of this opinion.

At the close of all the testimony defendant moved for a directed verdict on the ground that there was no proof of negligence on the part of the defendant which was the proximate cause of plaintiff's damage, and that the undisputed evidence showed that he was employed by the county to remove snow and keep the highways open and that he was in the performance of that duty at the time of the collision, and further, the evidence showed that plaintiff was guilty of contributory negligence and that "the most that can be said is that both parties were guilty of negligence in going through this cut bank which only had room for one car, and under the law, under such a situation, neither party can recover." The motion was denied and the case was sent to the jury on instructions which are omitted from the record and to which there was

apparently but one exception, hereafter to be noted.

In seeking reversal defendant contends: (1) that the verdict in the case of Arthur Steinhauer against defendant is inconsistent with the verdict in favor of Nettie Steinhauer and that the verdict in the Arthur Steinhauer case exonerates the defendant from all liability; (2) that Arthur Steinhauer was guilty of negligence which was the proximate cause of the accident and that plaintiff can not recover because she assumed the risk of all dangers caused by the surrounding circumstances; (3) the evidence is insufficient to sustain the verdict because defendant at the time of the accident was engaged in a privileged use of the highway and that plaintiff had full knowledge of the conditions of the highway but nevertheless rode as a guest of her husband in a raging blizzard; (4) the court erred (a) in sustaining an objection to defendant's offer of proof that he did not carry any liability insurance; (b) in striking out the deposition of Schumacher; (c) in refusing to consider and admit in evidence the affidavit of a juror under motion for new trial; (d) in denying defendant's motion for a new trial; and (5) the verdict of the jury is excessive.

■■■ As has been observed, Arthur Steinhauer and Nettie Steinhauer each brought a separate action against defendant for damages on account of personal injuries resulting from the same accident. The court ordered the actions consolidated for the purposes of trial because apparently the actions involved common questions of law and fact, and for the purpose of avoiding unnecessary costs and delay. The causes, however, remained separate, separate verdicts were returned, and separate judgments entered. This order for a joint hearing affected merely the mechanics of the trial. Defendant has not appealed from the judgment in the Arthur Steinhauer case and in fact could not be said to be prejudiced by the verdict in that case. If there is an inconsistency in that verdict that might well be a ground for a motion by Arthur Steinhauer for a new trial but it has no bearing upon the verdict in this case.

The verdict in this case involves no inconsistency. However, it is held that consistency in a verdict is not necessary even if the issue were available to defendant here. United States v. Dotterweich, 320 U.S. 277, 64 S.Ct. 134, 88 L.Ed. 48; Dunn v. United States, 284 U.S. 390, 52 S.Ct. 189, 76 L.Ed. 356.

■■■ It is urged that plaintiff's husband was guilty of contributory negligence and that this negligence was attributable to plaintiff and that she assumed the risks and hazards attending the attempt of herself and husband to make the trip back to Reeder. This goes to the ruling of the court in denying defendant's motion for a directed verdict. The correctness of that ruling is dependent upon whether or not there was substantial evidence to go to the jury on the issue presented, or whether the evidence was such that all reasonable men must reach the same conclusion. The jury having found the issues in favor of plaintiff, the evidence must be viewed in a light most favorable to her and we must accept as true all facts which the evidence reasonably tended to prove. Plaintiff is also entitled to such favorable inferences as may reasonably be drawn from the evidence proven. The question of negligence and contributory negligence is usually one of fact to be determined by the jury. Huus v. Ringo, N. D., 39 N.W.2d 505; Railway Express Agency v. Mackay, 8 Cir., 181 F.2d 257; Westland Oil Company v. Firestone Tire & Rubber Co., 8 Cir., 143 F.2d 326. We need not consider the contention that the alleged negligence of the husband was under the circumstances disclosed in this case attributable to the plaintiff because we think the question of his contributory negligence was clearly for the jury. We are also of the view that the question of defendant's negligence was for the jury.

Considering the evidence in the light most favorable to the plaintiff it appears, that defendant was proceeding through this cut at an estimated speed of eight to ten miles an hour when he could see no more than a foot or two beyond the radiator. This highway had been opened for traffic through this deep snow by defendant him-

self and he knew when he entered this cut that someone else might be on this so-called one-way highway coming toward him. He was traveling at such a speed that he was not able to and did not stop within the range of his vision. In Bagan v. Bitterman, 65 N.D. 423, 259 N.W. 266, 267, the court said: "More and more the 'rule of safety'—the rule that one must drive at such a speed as to be able to stop within the assured clear distance ahead—is being recognized as the imperative duty of the driver."

To the same effect see, Axelson v. Jardine, 57 N.D. 524, 223 N.W. 32.

On the other hand, plaintiff's husband was driving his car at such a speed and with such care as to enable him to stop it within the range of his vision, and this he did.

It is also claimed that plaintiff assumed the risk, and hence, is not entitled to recover. In this connection it should be observed that the answer did not plead assumption of risk. But assuming that the issue was raised by the pleadings or otherwise, the burden of proof would be upon the defendant to show that the plaintiff knew, appreciated and deliberately and unnecessarily exposed herself to the danger but plaintiff certainly did not assume the danger arising from the negligence of the defendant. The defendant has not embodied the court's instructions in the printed record and we must therefore presume that the instructions given by the court were correct and sufficient and that they fully, accurately and adequately presented the law and issues to the jury. This contention, if in fact made in the trial court, would not, under the record here, entitle defendant as a matter of law to a directed verdict in his favor, and, as above observed, we assume that the issue was submitted to the jury by proper instructions. What has been said in this regard with reference to the claim that plaintiff assumed the risk is equally true as to the contention that she was guilty of contributory negligence. At most this claim presented an issue of fact for the jury and the jury has determined that issue in favor of plaintiff. Wilson v. Northern Pacific Ry. Co., 30 N.D. 456, 153 N.W. 429, L.R.A.

1915E, 991; Hutchinson v. Kinzley, 66 N. D. 25, 262 N.W. 251.

It is further contended that defendant was entitled to a directed verdict because he enjoyed what is referred to as a privileged position on the highway. The court instructed the jury that, "Under the circumstances existing in this case, neither vehicle had a greater right of way than the other. This is not to be construed as modifying or changing any portion of the instructions heretofore given to you." This is the only part of the court's instructions preserved in this record. Rule 10(b) of this Court provides that, "The printed record shall contain all of the essential pleadings, essential docket entries, the judgment or order appealed from or sought to be reviewed or enforced, and the opinion, findings and conclusions of the trial court * * * and, if the case was tried to a jury, the complete instructions of the trial court and the verdict."

In passing on the correctness of the instructions we must consider the charge as a whole rather than individual instructions or portions thereof. We must therefore decline to consider the contention that this portion of the instructions was erroneous. As the contention was embodied in defendant's motion for a directed verdict, however, we shall consider it.

As has been observed, defendant owned the truck he was driving at the time of the collision. He was at that time going out for certain other equipment which he owned which was or had been in use, not for county road purposes but for opening up snowdrifts for a farmer, and he was taking out fuel for the purpose of bringing that equipment back to Reeder. Section 39-0705 of the 1943 North Dakota Revised Code provides as follows: "The provisions of chapter 8 to chapter 13, inclusive, of this title applicable to the drivers of vehicles upon the highways shall apply to the drivers of all vehicles owned or operated by this state or any county, district, or other political subdivision of this state subject to such specific exceptions as are set forth in such chapters. The provisions of such chap-

ters shall not apply to persons, teams, motor vehicles, and other equipment while actually engaged in work upon the surface of a highway but shall apply to such persons and vehicles when traveling to or from such work."

Defendant's truck was not actually engaged in work on this highway. According to his own testimony, at most he was traveling to or from such work. The specific provisions of the North Dakota code concerning certain exemptions from the provisions of the above quoted Section 39–0705 are as follows:

Sec. 39–0906. "The speed limitations provided for in this chapter shall not apply to:

"1. Vehicles when operated with due regard for safety under the direction of the police in the chase or apprehension of violators of the law or of persons charged with or suspected of any such violation;

"2. Fire department or fire patrol vehicles when traveling in response to a fire alarm; or

"3. Public or private ambulances when traveling in emergencies.

"The exemptions provided for in this section shall not protect the driver of any such vehicle from the consequences of a reckless disregard of the safety of others."

Section 39–1018 contains the following provision: "2. The driver of a vehicle upon a highway shall yield the right-of-way to police and fire department vehicles when the latter are operated upon official business and the drivers thereof sound an audible signal by bell, siren, or exhaust whistle. This provision shall not operate to relieve the driver of a police or fire department vehicle from the duty to drive with due regard for the safety of all persons using the highway, nor shall it protect the driver of any such vehicle from the consequence of an arbitrary exercise of such right-of-way."

It seems clear that defendant could claim no exemption for his truck in the circumstances shown by the evidence. He was not at the time engaged in any work on the highway nor in any official duties, nor was he responding to an emergency call. We conclude that there was no error in denying defendant's motion for a directed verdict.

■ Defendant complains of the ruling of the court refusing to permit him to prove that he did not carry any liability insurance. The contention is bottomed on the fact that the court in examining one of the jurors asked him whether he had ever had an accident. The juror answered that he had and that as a result his automobile was totally wrecked. The court then asked: "Did you have any lawsuit over it?" to which the juror answered, "Well, the insurance took care of that." The witness further testified that there was no lawsuit; that the other party made a claim against him but his insurance company took care of it. There was no objection to this examination and so far as appears from the record defendant could have excused this juror had he desired to do so. We think the question is determined adversely to defendant's contention by the decisions of the Supreme Court of North Dakota. Beardsley v. Ewing, 40 N.D. 373, 168 N.W. 791, 794; Jacobs v. Nelson, 67 N.D. 27, 268 N.W. 873. In the first cited case the court, among other things, said: "The consideration as to whether or not the defendants are insured is entirely foreign to the question of negligence; but the fact must be conceded to have a bearing upon the interest of the defendants in the outcome, and to belong to that class of matter which it is proper ordinarily for the jury to consider in weighing the testimony of witnesses. Yet the disadvantage due to its prejudicial tendency is supposed to outweigh the value of the evidence as affecting the credibility and it is for this reason excluded. * * * In fact, the rule of exclusion is so well understood in the profession that there seems but little excuse for even asking such questions."

The question was not injected into the case by plaintiff or her attorneys. There was nothing in the examination of this juror to suggest to the jurors that a liability insurance company protected the defendant. Diligent counsel have called our attention to no case where defendant was al-

lowed to show in the first instance that he carried no liability insurance. We can not say that the incident resulted in any prejudice to the defendant.

Defendant offered to read to the jury certain portions of the testimony of Dr. Schumacher, tending to show that plaintiff's doctor had been unskillful in his treatment of plaintiff following the accident. It appeared, however, that her doctor was a licensed and practicing physician in North Dakota, a graduate of an accredited medical school, had been in practice for some thirty-five years and had had wide experience in treating cases similar to plaintiff's. This doctor had been plaintiff's family physician prior to the accident and she had known him for thirty years. All that is required of an injured person in the selecting of a doctor is to exercise ordinary care and prudence. Pyke v. City of Jamestown, 15 N.D. 157, 107 N.W. 359; Polucha v. Landes, 60 N.D. 159, 233 N.W. 264. There was no error in rejecting this testimony.

It is urged that the verdict was excessive but this contention presents no question for our consideration. Turner County, S.D. v. Miller, 8 Cir., 170 F.2d 820; Kroger Grocery & Baking Co. v. Yount, 8 Cir., 66 F.2d 700, 92 A.L.R. 1166.

It remains to consider defendant's contention that the court erred in denying his motion for new trial based upon the alleged misconduct of the jury. In support of this contention defendant offered an affidavit of one of the jurors to the effect that during the jury's deliberations the jurors debated the fact that defendant may have carried liability insurance. Such a motion is addressed to the discretion of the trial court and ordinarily the trial court's action is not subject to review. United States v. Kansas City, Mo., 8 Cir., 157 F.2d 459; Emanuel v. Kansas City Title & Trust Co., 8 Cir., 127 F.2d 175. The testimony of a juror may not ordinarily be received to show matters which influenced or affected the jury's deliberations and ordinarily a juror may not impeach his own verdict although such testimony might be received as to any facts bearing upon the existence of any extraneous influence. The granting or refusing of a motion for new trial under the federal practice is entirely discretionary with the trial court.

Being of the view that the record shows no prejudicial error the judgment appealed from is affirmed.