REVLON, INC., Appellant,

v.

Mrs. R. H. BUCHANAN, Appellee.

No. 17670.

United States Court of Appeals
Fifth Circuit.

Nov. 24, 1959.

Ben Weinberg, Jr., James M. Roberts, T. J. Long, Atlanta, Ga., for appellant.

Newell Edenfield, Atlanta, Ga., for appellee.

Before HUTCHESON, CAMERON and JONES, Circuit Judges.

CAMERON, Circuit Judge.

The main question presented by this appeal is whether there was sufficient evidence to justify the lower court in submitting to the jury the question of the liability of appellant Revlon for the injuries suffered by appellee, plaintiff below, from the "explosion" of a bottle of deodorant lotion manufactured by appellant. The charge of the trial court is not brought before us and we therefore indulge the presumption that the court correctly instructed the jury as to all questions of law raised by the pleadings.

Plaintiff was injured when a bottle of deodorant, manufactured by Revlon and purchased by plaintiff from a retail dealer about three weeks before, "exploded" when she was squeezing it gently and examining it to ascertain why none of the lotion would come out when she applied the usual pressure. She testified that the plug in the end of the bottle was expelled with great force and that it disintegrated into fragments, and that some of the lotion and some solid objects struck her eyes. She was attended by four doctors and was disabled for quite a period of time, and Revlon does not contend that the verdict of $3,000 returned by the jury was not justified by the evidence of injury.

She placed on the stand an expert whose testimony evidently believed by the jury, warranted the conclusion that the preparation was offered to the public in a container having a plug or stopper which, when the small hole in its center would become clogged by the coagulation of its contents, would be likely to be expelled with great force by the pressure which would ordinarily be exerted in an effort to use the preparation. The testimony of the expert was based in part upon his analysis and study, by the use of suitable instruments, of some of the pieces or fragments of the plug or stopper, which plaintiff testified blew out of the end of the polyethylene bottle.

Revlon placed its experts upon the stand and they, too, based their testimony tending to exonerate Revlon, to some extent, upon their examination of these pieces or fragments. The admissibility of the fragments into evidence and the weight of the testimony by which they were identified constitute the main thrust of Revlon's argument for reversal, although it assigns a number of errors alleged to have been committed by the court below.[1]

1. 1. That the doctrine of res ipsa loquitur is inapplicable where the custody or control of the object causing the injury was not in the manufacturer.

2. That the instrumentality was put to a use for which it was not intended.

3. That the evidence supported the hypothesis that the bottle or its contents had been tampered with while in the plaintiff's possession.

4. That the evidence pertaining to the fragments was without probative value, that it tended equally to support two inconsistent theories, and that Revlon's theory should have been accepted in preference to that of plaintiff, who carried the burden of proof and whose testimony was vague, contradictory and equivocal.

Because of the importance with which appellant invests it, we consider first, in some detail, the reception in evidence of the fragments of the bottle stopper. Plaintiff did not see where these fragments went at the time of the explosion, and did not go back to her home for some weeks thereafter. She instructed her maid, either directly or through her husband, to gather up the fragments or pieces of the plug and to preserve them for her. Later, the maid delivered to her directly, or through her husband, from three to seven pieces or fragments of what appeared to be polyethylene, stating at the time that she had gathered them from the portion of the room to which she had been directed by plaintiff.

Some testimony as to these fragments was given by the plaintiff herself. She had no personal knowledge of where they came from, but her testimony was not only not objected to, but she was submitted to a spirited cross-examination which led back to the question of the fragments and their recovery at least six times. In fact, the statement attributed to the maid was not brought out on her direct examination.[2]

When she was taken on cross-examination she answered one of appellant's questions stating that she saw the fragments within the next day or two—"I don't remember just when I did. When the maid told me—she said, 'I saved all of them things I swept up in your room, Miss Lottie.'" She was further questioned by Revlon's attorney at great length about claimed discrepancies between her testimony concerning the fragments and what she had stated when her deposition had been taken; and the attorney asked her directly what the maid had said.[3]

The same questions were repeated on other occasions and the attorney was apparently developing this phase of the testimony to the fullest in an effort to demonstrate to the jury that plaintiff did not have an accurate recollection concerning the fragments or that she was not telling the truth about them. No objection at all was made to the evidence at any time while the witness was on the stand or while the plaintiff's case was being developed.

When Dr. Miller was called as an expert and was questioned in detail about the fragments he had examined, no objection was made to his testifying.[4] Revlon did not raise any question about the admissibility of the evidence in specifying its errors upon which its appeal would be predicated and did not mention in its brief such a contention as one of the errors to be argued.

After the case had been argued and submitted to us Revlon filed a request for correction and supplementation of the record, which request we granted. By this supplement it is shown that, after all of the testimony was in and the court had called for argument to the jury, appellant moved orally to strike the testi-

---

2. Her direct testimony follows:
   "Q. Well, now, do you know whether the inner cap came out in one piece or not, or did it come out in fragments? A. It came out in fragments.
   "Q. How do you know that? A. Because the maid swept them off the floor, after I had come back from the doctor.
   * * * "

3. "Q. You got those from your maid—you got those from your maid— A. Yes.
   "Q. —While you were over at your daughter's— A. Yes.
   "Q. And said what? A. She had swept them up from under the bed and around the corners.
   "Q. I see. And those are the only fragments you ever saw? A. Yes."

4. In fact, Revlon's attorney seemed to acquiesce in the use by the witness of exhibits whose origin he knew nothing about:
   "Mr. Long: Q. Are you referring to this bottle or the other bottle? That is all I want to know.
   "The Witness: A. I am referring to Exhibit 1, the bottle which actually figured in the accident.
   "Mr. Weinberg: You mean what you were told?
   "Mr. Long: That is all right,"—with respect to which see Fort Worth & Denver Railway Co. v. Roach, infra, 219 F. 2d at page 352.

mony of Dr. Miller concerning the fragments and to strike the testimony of Mrs. Buchanan "with reference to the fragments and, indeed, to strike all testimony with reference to the fragments on the ground that there is no connection showing where the fragments came from." The court below responded that what the maid had said would be stricken, but denied the residue of the motion, stating that there were sufficient circumstances independent of the maid's statement to warrant the jury in finding that the fragments the maid turned over to plaintiff were those which had come from the bottle she was attempting to use.

In a supplemental brief, appellant excuses its failure to object earlier on the ground that it was not aware until the close of the evidence that "the only evidence connecting the fragments of plastic with the bottle of deodorant allegedly injuring the appellee was the testimony of the appellee of what her maid told her." We do not find that the record supports this contention. Plaintiff had made out her case by the testimony of herself and two witnesses. Defendant had placed four witnesses on the stand including experts, one of whom gave his opinion that the fragments submitted to him had not been involved in an explosion, but had been cut with a sharp instrument. Thereupon Dr. Miller was offered by plaintiff in rebuttal, and defendant placed one more witness besides the plaintiff on the stand in surrebuttal before the motion to strike was offered.[5]

▆ It is clear that, under federal practice, a litigant may not deal thus with the court and with his adversary. The general rule is that "objections must be made when the occasion therefor arises, [and] an objection to the admission of evidence to be availing on appeal or review, must be interposed, ordinarily, at the time the evidence is offered. And where the availability of an objection depends upon a statement of the grounds thereof or the reasons therefor, such grounds or reasons must be stated at the time the objection is interposed." 3 Am.Jur., Appeal and Error, § 350, p. 95.

The matter of objections, which, as this Court has pointed out more than once, is now covered by Rule 46 F.R. Civ.P., 28 U.S.C.A.,[6] has been held by us to be substantial: "Rule 46 of the Federal Rules of Civil Procedure * * * requiring a party to make known his objections and grounds therefor is not a mere technicality, but is of substance in the administration of the business of the courts."[7]

The importance of timely objection assigning specific ground is obvious. The cases cited hold clearly that the reason for the attempted exclusion of the evidence must be stated. This is so in order that the court may remove the objection itself, or that the litigants may have a chance to make other proof for that purpose. A reading of the cross-examination of the plaintiff here leads strongly to the assumption that the cross-examiner felt that he was gaining more by facing the plaintiff with inconsistent statements she had made about the gathering and preservation of the fragments than he would have by objecting to the admissibility of the testimony.

5. Appellant did not bring this evidence into the record by its original designation and it has never assigned as error the action of the trial court upon the motion to strike or exclude the findings. It is apparent that appellant avoided reliance upon any alleged error which might lead to a reversal for a new trial.

6. "For all purposes for which an exception has heretofore been necessary it is sufficient that a party, at the time the ruling or order of the court is made or sought, makes known to the court the action which he desires the court to take or his objection to the action of the court and his grounds therefor * * *"

7. Fort Worth & Denver Railway Co. v. Harris, 5 Cir., 1956, 230 F.2d 680, 682; and see to like effect Knight v. Loveman, Joseph & Loeb, Inc., 5 Cir., 1954, 217 F.2d 717; Fort Worth & Denver Railway Co. v. Roach, 5 Cir., 1955, 219 F.2d 351; and Virginia-Carolina Tie & Wood Co., Inc. v. Dunbar, 4 Cir., 1939, 106 F.2d 383.

This, in addition to the fact that most of the objectionable testimony was brought out by the appellant itself, demonstrates that the argument of appellant on this point is without merit. We agree also in the statement made by the trial court that the circumstances of the recovery and preservation of the small pieces was sufficient to support a jury finding that they were, in fact, expelled from the bottle stopper or plug at the time of plaintiff's injury.

We do not agree with appellant in its contention that the evidence on the part of plaintiff was not of sufficient quantity and quality to support the verdict of the jury in her favor. Under skilful cross-examination it is true that plaintiff did make apparently inconsistent statements. But there was no evidence at all that she was attempting to fabricate a case, and the jury had the right to decide which of her statements it would accept and to credit her testimony concerning the basic elements of her case concerning which there was no uncertainty or variation.

We do not find it necessary to discuss the doctrine of *res ipsa loquitur* and its application here since we are not advised whether the trial judge was influenced by that doctrine or submitted it to the jury. That doctrine is simply a facet of the general law that verdicts may rest upon circumstantial evidence. Appellant, itself, seeks to support the thesis that the jury could have drawn the inference that the bottle which caused plaintiff's injury had been tampered with while in the plaintiff's possession. We find nothing in the record justifying the argument, but even if it is sound, the answer is that such an inference was one to be drawn by the jury, not by the court.

It is undisputed that the plaintiff was injured by the violent expulsion of the plug and contents from the bottle when it was being squeezed according to the printed directions on the bottle, and that her injuries were serious enough to support a jury verdict of $3,000. In deciding whether the mishap was the product of Revlon's negligence, the jury was warranted in finding:

That the ingredients of the bottle would be harmful to the human eye, and that the normal use of them would bring the container near the user's eyes; that the bottle and contents had been handled by the plaintiff alone since she purchased it in due course of trade and that neither she nor the merchant who sold it to her had tampered with them in any way; that the force of the explosion was sufficient to tear the plug into fragments; [8] and that the fragments which were preserved by the plaintiff and submitted to the experts and to the jury were parts of the plug which blew out at the time of plaintiff's injury; and that these fragments showed that the material in them was not more than half as thick and strong as that in the plugs which Revlon exhibited to the jury.

Such findings would, in our opinion, furnish a sufficient basis for the jury to conclude that Revlon was negligent in placing its lotion in bottles which, in normal use, would be calculated to cause injury to the people who purchased and used them. Such a conclusion is, in our opinion, consonant with the law governing the duty of manufacturers.[9]

---

8. Appellant's attorney brought out on cross-examination that plaintiff's expert had, on one occasion, used normal pressure which blew the plug out of the bottle a distance of ten feet; and, in the presence of the jury, the attorney had the witness exert similar pressure, which forced the plug (and some of the contents of the bottle) out of the container and "half way across the courtroom." According to defendant's contention, these plugs had been lubricated by the contents of the bottle upon their prior removal.

9. Cf. 65 C.J.S. Negligence § 100, p. 629 et seq. and the cases cited; Judge Cardozo's opinion in MacPherson v. Buick Motor Co., 217 N.Y. 382, 111 N.E. 1050, L.R.A.1916F, 696; the long line of cases digested in an annotation in 13 A.L.R.2d 196 et seq.; and International Derrick & Equipment Co. v. Croix, 5 Cir., 1957, 241

The quantity and quality of proof necessary to make out a case for submission to a jury in a federal court are determined by the Seventh Amendment to the Constitution of the United States, the Federal Rules of Civil Procedure and the decisions of the courts of the United States. White v. New York Life Ins. Co., 5 Cir., 1944, 145 F.2d 504; Wright v. Paramount-Richards Theatres, 5 Cir., 1952, 198 F.2d 303; Reuter v. Eastern Air Lines, 5 Cir., 1955, 226 F.2d 443; and Continental Casualty Co. v. Holmes, 5 Cir., 1959, 266 F.2d 269; and cf. Dick v. New York Life Ins. Co., 1959, 359 U.S. 437, 79 S.Ct. 921, 3 L.Ed.2d 935.

Finding no reversible error in the trial of the case in the district court, its judgment is

Affirmed.

F.2d 216, and our discussion there of the preceding cases.

Liability is determined by the substantive law of Georgia. No cases from that state have been cited which are at war with the principles here announced, and several cases relied upon by appellee tend to support it. E. g. Payne v. Rome Coca-Cola Bottling Co., 10 Ga.App. 762, 73 S.E. 1087; Monahan v. National Realty Co., 4 Ga.App. 680, 62 S.E. 127; Queen v. Patent Scaffolding Co., 46 Ga.App. 364, 167 S.E. 789; Criswell Baking Co. v. Milligan, 77 Ga.App. 861, 50 S.E.2d 136; and Bradfield v. Atlanta Coca-Cola Bottling Co., 24 Ga.App. 657, 101 S.E. 776.