James F. McDEVITT and Wife, Veva L.
McDevitt et al., Appellants,

v.

STANDARD OIL COMPANY OF TEXAS
et al., Appellees.

No. 24594.

United States Court of Appeals
Fifth Circuit.

Feb. 28, 1968.

Warren Burnett, Robert D. Pue, Odessa, Tex., for appellants.

William Duncan, J. Malcolm Harris, Eugene T. Edwards, El Paso, Tex., Hardie, Grambling, Sims & Galatzan, El Paso, Tex., for appellee Standard Oil Co. of Texas.

Kemp, Smith, White, Duncan & Hammond, El Paso, Tex., for appellee United States Rubber Co.

Before TUTTLE, GEWIN and GODBOLD, Circuit Judges.

GEWIN, Circuit Judge:

This is an appeal from a final judgment entered on a jury verdict returned in the United States District Court for the Western District of Texas in favor of the defendant below, Standard Oil Company of Texas. Standard Oil impleaded United States Rubber Company as manufacturer and Preston Lee Howard as the retailer of the automobile tires involved in this litigation.[1] The plaintiffs, James F. McDevitt and wife, individually and as next friends of their minor children (appellants), sought recovery on a strict liability theory in tort for injuries to persons and property caused when their automobile tires failed and the car left the road. Jurisdiction is based on diversity of citizenship. The jury returned a general verdict for the appellee Standard Oil Company of Texas. Judgment was entered on the verdict and the McDevitts have prosecuted this appeal.

The sole question which we must decide is whether the district court erred in instructing the jury on certain defensive matters in which language of contributory negligence was used. We have concluded that there was no prejudicial error and affirm.

The facts in this case are not in controversy. On October 17, 1959, James McDevitt purchased a set of five Atlas Weather Guard Tubeless tires[2] from Preston Howard at the Freeway Chevron Station in El Paso, Texas. James McDevitt first asked Howard for size 900 x 14 tires, but was told that 800 x 14 was the largest size tire that should go on his 1957 Ford Station Wagon. The service station operator showed him the specifications listed in the tire catalog, but McDevitt insisted on size 850 x 14, being under the mistaken impression that he had a large enough rim on his station wagon to permit the use of a size 850 x 14 tire. Both James McDevitt and his wife regularly carried 35 pounds pressure in their tires, choosing not to rely on the

---

1. The judgment of the district court contains the following:
   "* * * said verdict being in favor of the Defendant, Standard Oil Company of Texas, and the Court being of the opinion that the Defendant is entitled to judgment upon the verdict of the Jury, and further, that both of the Third-Party Defendants, United States Rubber Company and Preston Lee Howard, should go hence without day."
   It is further ordered, adjudged and decreed that the plaintiffs:
   "* * * take nothing in their suit against the Defendant, Standard Oil Company of Texas, and that the Standard Oil Company of Texas go hence without day and further, that the Standard Oil Company of Texas take nothing against the Third-Party Defendants, United States Rubber Company and Preston Lee Howard, and that the United States Rubber Company and Preston Lee Howard go hence without day; and further, that all costs are hereby taxed against the Plaintiffs herein."

2. This is a high traction tire often used in snow and mud because of its deeper tread design.

pressure of 24 to 26 pounds as recommended in published manuals. McDevitt had also driven the tires at pressures as low as 15 pounds. The tires were often driven over unpaved roads and even off the road as the McDevitts frequently used the station wagon for camping trips.

During the early afternoon of July 21, 1960, Mrs. McDevitt was driving the station wagon on the highway near the town of Comstock, Texas, accompanied by her six minor children. She was proceeding at approximately 60 m. p. h. when the left rear tire blew out. She managed to keep the vehicle in the proper lane and when she had slowed to about 35 m. p. h. in order to pull onto the shoulder of the road, the left front tire came off the rim. The station wagon overturned, demolishing the vehicle and injuring Mrs. McDevitt and the six children.

Mrs. McDevitt testified at the trial that the station wagon had been driven an average of 800 miles per month. The tires had been on the station wagon about nine months at the time of the accident, yet she testified the tires had only 3,800 miles on them.

Both sides called expert witnesses. Appellant's expert stated that the standard size of tire for appellants' vehicle was 800 x 14. He testified that the rim on appellant's vehicle was a "J" rim, and that in his opinion such a rim was capable of accommodating an 850 x 14 tire. His opinion was that rubber wore off the side of the bead,[3] causing the accident. He concluded that the wearing off of the rubber was due to the fact that too little rubber was placed on the tire at the bead during manufacture.

Appellee's expert witness said the 850 x 14 tires were designed and manufactured for a "K" rim, but appellants' vehicle was equipped with "J" rims. He stated that the tire size for appellants'

rim should have been 750 or 800, not 850. Excess inflation of the tires and the characteristics of a station wagon would cause a wearing problem, as would the high-tread, deep traction type of tire, excessive speed, and being driven over rough terrain. The opinion of the appellees' expert was that the misfit caused chafing at the bead, resulting in the failure of the tires.

The trial judge gave numerous instructions to the jury. Pertinent to this appeal he charged that:

"Negligence, as that term is used in this charge, is the failure to use or exercise ordinary care. That is, the want of such care as an ordinarily prudent person would have exercised under the same or similar circumstances or failure to do that which an ordinarily prudent person would have done under the same or similar circumstances."

After giving the above charge defining negligence, the trial judge then proceeded to give instructions on the defense interposed [4] to which the appellants strenuously object. In this connection he instructed the jury as follows:

"Now as to the defenses of the defendant in this case, you are instructed that if you find from a preponderance of the evidence that James F. McDevitt exercised his own judgment in the selection of the tires in question, and acted contrary to the advice of the seller with respect to the size or type of tire to be used on the vehicle in question, and if you further find that such conduct constituted negligence, and if you further find such negligence, if any, was the proximate cause of the injuries herein complained of, then, in such event, you are instructed to return your verdict in favor of the defendant, Standard Oil Company of Texas.

3. The bead is the portion of the tire that is in contact with the rim and the side of the bead is in contact with the rim flange. The base or sole of the bead is the portion that is in contact with the bead seat on the rim.

4. The primary defense relied upon by appellee was that the appellant James McDevitt deliberately purchased tires of improper size and that he and Mrs. McDevitt misused the tires purchased.

"You are further instructed that if you find from a preponderance of the evidence that plaintiff James F. McDevitt, purchased a size or type of tire for his 1957 Ford station wagon which he knew was contrary to the specifications contained in the Atlas catalog of specifications, and if you further find that such acts on his part, if you find he so acted, constituted negligence, and if you further find that such negligence, if you have so found, was the proximate cause of the accident and injuries herein complained of, then, in such event you are instructed to return your verdict in favor of the defendant, Standard Oil Company of Texas.

"You are further instructed that if you find from a preponderance of the evidence that plaintiffs James F. McDevitt, and wife, Veva L. McDevitt, or either of them, operated the tires in question at an excessive rate of speed, or operated the tires off the road in rough country, or operated the tires with insufficient air pressure, or operated improper sized tires on the vehicle, or by a combination of such acts misused the tires in question, and that such conduct, if they so did, was negligence as that term is defined herein, and that such negligence, if any, was a proximate cause of the accident in question, then in such event, you are instructed to return your verdict in favor of the defendant, Standard Oil Company of Texas."

Later in his instructions, the trial judge also instructed the jury on misuse as a defense without mentioning negligence, using the following language:

"Defendants have alleged that the tires were not defective, but that the blowout of the tires proximately resulted from placing 850 x 14 tires on the J-rims on a 1957 Ford station wagon and driving same at high and low inflation, and driving at excess speeds

and a combination of these things. The burden of the proof that the tires were misused is upon defendants. If you find from a preponderance of the evidence that the accident was proximately caused by any misuse of the tires then you will find for the defendants."

The jury returned the following verdict:

"We, the Jury, find for the Defendant, Standard Oil Texas [sic] of Texas."

■ The doctrine of strict liability was adopted as the law of Texas [5] and applied to foodstuffs intended for human consumption at an early date in the well known and important case of Decker & Sons, Inc. v. Capps, 139 Tex. 609, 164 S.W.2d 828, 142 A.L.R. 1479 (1942). This court, in Putman v. Erie City Manufacturing Co., 338 F.2d 911 (5 Cir. 1964) correctly predicted that the Texas Supreme Court would extend the doctrine to encompass any defective product which causes physical harm to persons, as it has recently done. McKisson v. Sales Affiliates, Inc., Tex., 416 S.W.2d 787 (1967), Helene Curtis Industries, Inc. and Cosmair, Inc. v. Pruitt, 385 F.2d 841 (5 Cir. —Oct. 20, 1967). The existence of the rule of strict liability in Texas is now clear. The problem which faces us in this case, however, is the narrower issue of the applicability of the defense of contributory negligence in such an action.

Appellants contend that the charges which allowed the jury to find that contributory negligence was a defense to a strict liability action were erroneous in view of the fact that the Supreme Court of Texas rejected such an idea in the recent cases of Shamrock Fuel & Oil Sales Co., Inc. v. Tunks, Tex., 416 S.W.2d 779 (1967), and McKisson v. Sales Affiliates, Inc., Tex., 416 S.W.2d 787 (1967). A careful examination of these cases is necessary in order to determine exactly what the Texas Supreme Court did and did not hold on this point.

We will first consider the *Tunks* case. The facts here were that Omy Ray Mun-

5. This being an action based upon diversity of citizenship, the law of Texas is, of course, controlling. Erie Railroad Co. v.

Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938).

singer, a minor, and his younger brother, while at play one afternoon in their backyard, placed a smoldering stick which they had just removed from an incinerator into the rear of a toy truck. Omy Ray then directed his brother to pour kerosene, which had been adulterated with gasoline, onto the smoldering stick. The resulting explosion caused injury to Omy Ray and suit was brought by him and his father, William Earl Munsinger, based on the theory of strict liability. A mistrial was declared when the jury returned incomplete findings on the special issues submitted to them. Shamrock sought a writ of mandamus in the Texas Supreme Court to order Texas District Judge Tunks to render judgment in Shamrock's favor. Two of the special issues which the jury had failed to answer concerned whether the minor plaintiff knew and appreciated the extent of the dangers involved in the use of the kerosene, and whether the minor plaintiff voluntarily exposed himself to such danger. The jury did find that the minor plaintiff was contributorily negligent, and that such negligence was a proximate cause of his injuries. The extent of the Texas Supreme Court's inquiry was greatly curtailed due to the nature of a mandamus proceeding. The narrow issue considered was whether or not contributory negligence is a defense to an action based upon strict liability. The Texas Supreme Court recognized the conflict in the cases in this area, and quoted from Deans Prosser and Wade [6] and 2 Restatement of the Law of Torts (2nd Ed.) 356, § 402A, Comment (n) to the effect that contributory negligence is no bar to a strict liability action when such contributory negligence consists of a failure to discover that a product is defective, but does constitute a defense when it consists of a voluntary and unreasonable proceeding to encounter a known danger. The Texas Supreme Court then said:

"Here it is not necessary to decide and hence we make no holding upon the issue of 'improper use', or whether, if allowable, it is a defense, or if the showing of a proper use is properly regarded as a part of plaintiff's action."

Thus the essential holding in this case was stated by the court as follows:

" * * * these defenses, voluntary exposure and such others as may be recognized should be submitted specifically and not under the formula embraced by the contributory negligence issues (Nos. 36 and 37) employed in this case. Such form of submission embraces a failure to discover a defect or to guard against the possibility of its existence which under the greater weight of authority is not a defense to the action."

The writ of mandamus was therefore denied.

The case of McKisson v. Sales Affiliates, Inc., supra, was released simultaneously with the *Tunks* opinion. The facts in this case reveal that Mrs. McKisson owned a beauty shop, but was not herself a beauty operator. She frequently had her employees arrange and treat her hair. On a prior occasion her hair had been bleached. Mrs. McKisson was injured when one of her employees in the beauty shop gave her hair a permanent wave treatment with a preparation known as Zotos Lanolin Bath. The bottle of lotion had been given to Mrs. McKisson as a sample and the label failed to provide adequate directions for the use of the preparation. Suit was brought against Sales Affiliates, Inc., the distributor, for the loss of hair and burns of the face and scalp which resulted from the application of the lotion which should not have been applied to bleached hair. The jury also found that the lotion was not reasonably fit for its intended purpose, that the use of the lotion was the proximate cause of her injury, that adequate directions were negligently omitted from the container and that this negligent omission was the proximate cause of the injuries to Mrs. McKisson. Mrs. McKisson was awarded $1,000 in the trial court. The Texas Court

---

6. Prosser, Law of Torts, 3rd Ed. 656, Wade, 19 Sw. L.J. 5, 1 c. 21.

of Civil Appeals reversed the trial court. 408 S.W.2d 124. The Texas Supreme Court, however, overruled the Texas Court of Civil Appeals and held that:

" * * * Mrs. McKisson was at fault in not discovering that the product was unsuitable for bleached hair. *This species* of contributory negligence is not a defense to strict liability." (Emphasis supplied).

The companion *Tunks* case was referred to in connection with the decision.

■ It is evident from these two decisions that the Supreme Court of Texas did not decide that contributory negligence is never a defense to a strict liability action, but limited its holding to the principle that one who is contributorily negligent in failing to discover a defect in a product is not barred from recovery. The question of whether that species of contributory negligence variously referred to as "misuse", "improper use", "voluntarily proceeding to encounter a known risk" or any other of the myriad synonyms used by various courts and writers constitutes defensive matter to such an action was expressly left open.[7]

■ The more recent case of Procter & Gamble Manufacturing Co. v. Langley, 422 S.W.2d 773 (Tex.Civ.App. 1967) sheds further light in this area, and in reaching its decision the court gave full consideration to McKisson v. Sales Affiliates, Inc., supra, and Shamrock Fuel and Oil Sales Co., Inc. v. Tunks, supra, the two cases on which appellants so strongly rely. In that case Mrs. Langley and her husband sought damages from Procter and Gamble Manufacturing Co., Procter and Gamble Distributing Company and Tom Thumb Stores, Inc. for injuries alleged to have been received as a result of Mrs. Langley's use of a home permanent hair wave product known as "Milk Wave Lilt". The three defendants were alleged to be the manufacturer, the wholesale distributor and the retail seller of the product. Mrs. Langley testified that she read and understood the instructions which accompanied the product, and her own testimony reveals that she violated the instructions by leaving the lotion on the "test curl" only four instead of ten minutes, failing to discontinue use when the test curl became "sticky", and by leaving the lotion on her hair for twice the length of time stated in the instructions. Mrs. Langley was awarded $5,549.25 on the trial of the case, but the Texas Court of Civil Appeals reversed. This reversal was based on several grounds, one of which was that there was no evidence, or insufficient evidence to prove that the product was defective, unmerchantable or unfit. Another basis for this reversal, however, was Mrs. Langley's "misuse" of the product. As succinctly stated by the court in the opinion written by Chief Justice Dixon, "Mrs. Langley's violation of the plain instructions and warnings was a *misuse* of Milk Wave Lilt and constitutes a defense to her cause of action." (Emphasis supplied.)[8] Another clear

---

7. Terminology in this area has led to much disagreement in both the case law and among the commentators. Facts somewhat similar to those involved in this case have frequently been held to constitute defensive matter, but have been referred to under the various titles of "contributory negligence", "misuse", "improper use", "assumption of the risk", "absence of proximate cause", "absence of reliance on the implied warranty" and many others. Such semantic exercises, however, have exerted little actual influence on the final resolution of the cases. See Annot. 4 A.L.R.3rd 501. Much of the problem in this area has arisen over the earlier characterization of a strict liability action as being in the nature of a contract action, thereby rendering the use of such terms as "contributory negligence" and "assumption of the risk" inapposite. Later cases have emphasized that breach of an implied warranty in the sale of goods sounds in tort. Under Texas law the "breach of warranty" concept discussed in strict liability cases is essentially a tort and is not contractual in nature. However, although sounding in tort, liability is not based upon negligence. Decker & Sons, Inc. v. Capps, 139 Tex. 609, 164 S.W.2d 828 (1942).

8. The Texas court noted that the jury found that Mrs. Langley was not guilty

statement of the rule was made by Chief Justice Dixon on rehearing where he said:

> "We do not believe that the strict liability doctrine means that under circumstances such as we have here a consumer may knowingly violate the plain, unambiguous instructions and ignore the warnings, then hold the makers, distributors and sellers of a product liable in the face of the obvious *misuse* of the product.

> "Appellees brought their suit on the theory of implied warranty. We agree that the product carried an implied warranty of fitness, but such warranty existed only if the product was *used* in accordance with directions. The implied warranty did not apply when the product was *misused,* as it undisputably was in this case." (Emphasis added.)

The above expression of Texas law is controlling in this case. The record before us reveals that James McDevitt was affirmatively provided with the manufacturer's instructions regarding the proper tire size for his vehicle and yet he purchased an improper size. In addition, the vehicle was driven with air pressure in the tires which at times was well above, and at other times well below, the recommended pressure as set out in published manuals. There was also evidence that the station wagon was driven at excessive speeds and over rough terrain. It is clear that such action under the rationale and teachings of the case of Procter & Gamble Manufacturing Company v. Langley, supra, as well as the Restatement of Torts, 2d Ed., § 402A, Comment (n) is

a defense in Texas to an action based on strict liability in tort. To hold otherwise would be to convert a strict liability cause of action into one of absolute liability. Such a holding would be at odds with the basic purpose of the doctrine. This basic purpose is to provide judicial protection for the otherwise defenseless consumer who usually will lack the ways and means to discover or prove the defect in a product which he purchases in reliance upon massive advertising campaigns and wide spread acceptance. It is not a part of this purpose to permit the imposition of absolute liability upon the manufacturer or distributor for no other reason than that the product was placed on the market. See Helene Curtis Industries, Inc. and Cosmair, Inc. v. Pruitt, supra.

■■ In light of the fact that misuse does constitute a defense to a strict liability action in Texas, the charges in this case cannot be held to be erroneous under the facts and in the circumstances here involved. In fact, the charge as given not only required proof of misuse, it also informed the jury that such misuse would be a defense only if it constituted negligence which was the proximate cause of the injuries of which appellants were complaining. This places a greater burden on the appellees than does the rule that proof of misuse establishes a submissible issue to be decided by the jury. We take note of the fact that in the *Procter and Gamble* case, supra, the jury acquitted Mrs. Langley of negligence, but the court found it unnecessary to pass on the negligence question (see footnote 8 supra).[9]

of contributory negligence. Footnote 2 of that opinion is as follows:

> "Questions of contributory negligence in this case were submitted to the jury and found favorably to Mrs. Langley. Since we have concluded that the judgment here must be reversed on other grounds we shall not pass on the question of contributory negligence in this case."

**9.** It should be noted that in the instant case the court did charge in a separate

part of its instructions, without objection, that misuse would constitute a defense, omitting any reference to the term "negligence", but elsewhere in the charge it was made abundantly clear that such misuse must also amount to negligence which proximately caused the injuries complained about in the suit. This part of the court's instruction is set out above in the opinion.

It is our conclusion that the charge of which the appellants complain, when considered with all of the instructions as a whole, is not prejudicial and actually imposed a greater burden on the appellees than was required by the applicable law. The judgment of the district court is affirmed.