Charles E. DOSS et al., Plaintiffs-
Appellees,

v.

**APACHE POWDER COMPANY,**
Defendant-Appellant.

No. 27521.

United States Court of Appeals,
Fifth Circuit.

July 24, 1970.

Rehearing Denied and Rehearing En
Banc Denied Sept. 3, 1970.

W. O. Shafer, James M. O'Leary, Shafer, Gilliland, Davis, Bunton & McCollum, Odessa, Tex., for defendant-appellant.

John J. Watts, Odessa, Tex., for plaintiffs-appellees.

Before THORNBERRY, GODBOLD and MORGAN, Circuit Judges.

GODBOLD, Circuit Judge:

This is an appeal from a judgment entered in the Western District of Texas against Apache Powder Company for damages for personal injuries to three

persons and the death of a fourth in an accidental explosion of Apache dynamite in Texas. We reverse and remand for a new trial.

When the explosion occurred the dynamite was on a truck of C. H. Brockett, Inc., which used dynamite in recovering casings from oil wells. Those injured and killed were employees of Brockett. The chain of circumstances from manufacture to explosion were these. Apache manufactured the dynamite at its plant in Arizona. Within four months after manufacture, in sales completed at the plant, it sold dynamite to Mrs. Genevieve Randol, a dealer of Odessa, Texas. Mrs. Randol transported the dynamite from Arizona to Texas in her own trucks and stored it in magazines owned by her in Texas. She sold some of it in Texas to Brockett.

Brockett stored its dynamite in its own magazine until needed, then it would be placed on a Brockett truck to be hauled to job sites. Brockett made its last purchase of dynamite from Mrs. Randol around 30 to 45 days prior to the explosion. The dynamite which exploded was two and a half years old.

Dynamite is made of nitroglycerine mixed with inert matter. Plaintiffs contended that the dynamite on the Brockett truck had deteriorated because of improper transportation and storage and due to the passage of time since its manufacture, resulting in the nitroglycerine separating from the inert material, making the dynamite more sensitive to heat. The dynamite caught fire and exploded. Plaintiffs contended that the fire may have been caused by an under-inflated tire on the truck becoming overheated.

Numerous theories of recovery were submitted to the jury, including negligence by virtue of violation of an Arizona statute, strict liability, breach of warranty, res ipsa loquitur and specific acts of negligence. A verdict was returned for the plaintiffs in the amount of $397,200.

1. The charge on the Arizona statute.

The trial court reversibly erred in giving the following charge, duly objected to, based on an Arizona statute relating to manufacture and sale of explosives.

First, presenting the Plaintiff's theory of the case to you, you are instructed that this is a suit brought under statutory law, to-wit: The Statutes of Arizona, as well as a suit brought by Plaintiffs for breach of an implied warranty, and in addition to this, the Plaintiffs in this cause have sued for negligence at common law in many different respects, and it is necessary that the Court in this Charge give you the applicable law, first with reference to the statutory action that is brought. It is provided by Section 27–322, Sub-section (B), Arizona revised Statutes, as follows: "No nitroglycerin, nitro, blasting powder or other high explosives shall be sold or used after twelve months from the date of manufacture." It appears without dispute that the sale of the dynamite involved in this explosion was completed in Arizona and hence the law of Arizona is controlling here.

You are therefore instructed by the Court that if you find that a Statute of Arizona has been violated with reference to the sale of the dynamite which was sold in Arizona, then in such event, you will find that the Apache Powder Company was guilty of negligence as a mater of law, if you find that this law was designed as a safety measure and because there is a potential danger in the use of dynamite over one year of age.

If you further find and believe from a preponderance of the evidence that it was the purpose of the Arizona Legislature in the passing of such statute to protect users and purchasers of dynamite, such as the plaintiffs herein, and Wayland Smith [the decedent], from damages and injuries, and if you believe that it was passed for the safety of those using explosives, you will therefore find from a preponder-

ance of the evidence, if you so find, whether or not the statutory negligence of the Defendant, as a result of the violation of the statute, if you have so found, was a proximate cause of the damages suffered by each of the Plaintiffs, as that term has been defined herein, and if you so find said negligence, if any, and said proximate cause, if any, then you will find for the Plaintiffs.

The charge was erroneous in several respects. None of the dynamite was as much as twelve months old when sold by Apache to Randol in Arizona. Thus Apache did not breach the Arizona statute by any sale in Arizona.

If any sale of over-age dynamite occurred it took place in Texas when Randol sold to Brockett. Apache could have no responsilbity from the making of that sale unless Randol was its agent, or unless Texas law made Apache responsible for the acts of its independent dealer engaged in selling dynamite. Because of these possibilities of vicarious liability of Apache, we must discuss whether the Arizona statute could affect the Texas sale.[1]

■ In this diversity action, we are bound to apply the law of Texas, including its conflict of laws rules. Klaxon Co. v. Stentor Electric Mfg. Co., 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). Under that law, an action for products liability is one in tort and not in contract. Helene Curtis Industries, Inc. v. Pruitt, 385 F.2d 841 (5th Cir. 1967); McDevitt v. Standard Oil Company of Texas, 391 F.2d 364, 369 n.7 (5th Cir. 1968). Under Texas choice of law rules, in tort cases, the *lex loci delicti* governs. Marmon v. Mustang Aviation, Inc., 430 S.W.2d 182 (Tex. 1968).

■ The last paragraph quoted above from the charge appears to say that the purpose of the Arizona legislature goes along with the dynamite wherever it travels, so that an injured Texas user of Arizona dynamite sold in Texas more than a year after its manufacture is entitled to recover against the manufacturer because of the Arizona one-year rule. This is incorrect. The Texas law articulating the consequences of a sale of dynamite in Texas is concerned with Arizona law to the extent only, if at all, that Texas may have incorporated it into its own law. Rights created by a foreign statute will be denied enforcement in Texas unless the Texas statute law creates a similar right. State of California v. Copus, 158 Tex. 196, 309 S.W.2d 227, cert. denied, 356 U.S. 967, 78 S.Ct. 1006, 2 L.Ed.2d 1074 (1958); Moore v. Bramlett, 415 S.W.2d 526 (Tex.Civ.App., 1967). We are referred to no Texas law forbidding the sale of aged explosives, and we have discovered none.[2]

Arguably, Arizona policy relating to dangerous materials manufactured or initially sold within its borders, as exemplified either in its statutes or its nonstatutory law, could be so compelling that Texas might give effect to it in determining whether under Texas law there are Texas-imposed duties the breach of which would give rise to liability in Texas. In such event Texas would not be giving extraterritorial effect to Arizona law but employing Arizona law as a useful tool in deciding what its own law should be.

The plaintiffs refer us to nothing in Texas jurisprudence, and we find nothing, which would indicate that Texas has incorporated into its law the Arizona one-year policy, or that it follows a rule that with respect to Texas sales of dynamite the maximum allowable safe age shall be that prescribed by the state of its manufacture.

---

1. This is not to say that Apache could not have nondelegable duties as a manfacturer which could impose nonvicarious liability directly upon it.

2. Texas statutes allow municipalities to regulate the storage and moving of dynamite, Vernon's Ann.Civ.St. art. 1068, and direct the manner in which explosives may be used in mining, Vernon's Ann.Civ.St. art. 5908, Vernon's Ann.P.C. art. 1599.

The plaintiffs assert that the *lex loci* rule, having been repudiated or qualified in a number of jurisdictions, is no longer good law anywhere. This ignores the recent *Marmon* decision. Appellee's argument that *Marmon* was decided by a close vote and that two new justices have come to the Texas Supreme Court since that decision was handed down, so that it should be regarded as overruled, ignores the principle of *stare decisis,* disregards the fact that many jurisdictions have chosen to retain the traditional rules when litigants urged that such rules be discarded [3] and asks the federal courts to second-guess the highest court of a state as to matters of state law.

A staggering multiplicity of other grounds are asserted as error in the charge and in admission of evidence. We discuss some of them which might arise at another trial.

## 2. Charges

■ The availability under Texas law of the doctrine of res ipsa loquitur against the manufacturer of dynamite has been settled in Dement v. Olin-Mathieson Chemical Corp., 282 F.2d 76 (5th Cir. 1960), subject to our later decision in *Helene Curtis, supra.* Whether intervening acts of others and the passage of time are sufficient to show alteration or change in condition of the dynamite after manufacture is for the jury. *Dement, supra* at 83.[4]

The trial judge charged that dynamite is an inherently dangerous product and that it was the duty of Apache to warn the dealer (Mrs. Randol) and her employees and Brockett and "the users of the product" of any inherent dangers in the use of dynamite which the plaintiffs did not know or in the exercise of reasonable care could not have discovered, and that the duty to warn was nondelegable and could not be discharged by giving of warnings to a dealer or distributor. This was not, as claimed by defendant, a charge of absolute duty to warn since it contained, albeit in a somewhat confusing manner, the qualification as to dangers of which the plaintiffs knew or should have known.

■ The charge was erroneous in requiring that the warning actually be brought home to the purchaser and each of his employees and any user. Apache needed only give warnings reasonably calculated to be read and understood by the person likely to use the product. *Helene Curtis, supra,* 385 F.2d at 861; James, Products Liability, 34 Texas L. Rev. 45 (1955). Plaintiffs' argument is that a different rule applies for dynamite because of the grave risk of harm therefrom, citing a comment to Restatement of Torts, Second § 388 at p. 309. The comment recognizes that there may be a duty to take higher precautions for a dangerous chattel, but neither the section nor the comment imposes an absolute duty to bring home the danger.

■ In some circumstances a warning by the manufacturer to a supplier may be sufficient to discharge the duty to inform those for whose use the article is intended, *Helene Curtis, supra,* at 862, Nishida v. E. I. DuPont De Nemours & Co., 245 F.2d 768 (5th Cir. 1957). On the other hand, it may not be sufficient to warn the dealer if the article is highly dangerous, or the manufacturer has knowledge that the dealer is not careful in the conduct of his business, or the manufacturer has no knowledge of the likelihood whether the dealer will pass on the warning. Restatement, § 388, comment n at 309–10.

---

3. Cramton and Currie, Conflict of Laws, 257–258 (1968).

4. We need not consider the claim that the charge on res ipsa was confusing and adjusted to plaintiffs' claim rather than to the facts; the claim that the charge did not set out defendant's right to refute the inference of negligence arising from res ipsa; whether the court's failure to charge on proximate cause in relation to res ipsa was cured by references to proximate cause elsewhere in the charge; and whether the court sufficiently charged on proximate cause with respect to any of the theories of liability.

The specification of error relating to the charge under § 402A, Restatement, need not be discussed, since it can easily be dealt with at another trial.

■ The court erred in charging that there was an absolute duty on Apache not to permit over-age dynamite "to remain upon her [Mrs. Randol's] shelf subject to sale to the public." (The charge did not even require knowledge by Apache that the dynamite was superannuated.) The plaintiffs cite no authority imposing on a manufacturer, even of dynamite, an absolute duty to get it back from one to whom sold if it becomes old in the dealer's hands.

■ Apache is correct in its argument that the supplier of chattels known to be dangerous for intended use is liable only if used in the manner for which it is supplied, and the jury should be so charged. *Helene Curtis, supra*, 385 F.2d at 855; Restatement, § 388, comment e at 303.

■ Texas recognizes misuse as a defense in a strict liability action. McDevitt v. Standard Oil Co. of Texas, *supra*. The court charged that there could be no misuse "unless the directions and instructions and advertising of the defendant Apache Powder Company specifically forbade the use of C. H. Brockett affirmatively and expressly, which the said C. H. Brockett was then and there making of said dynamite." The plaintiffs refer us to no authority supporting the limitation of misuse to violation of express and affirmative instructions from the manufacturer. See Prosser, The Fall of the Citadel, 50 Minn.L. Rev. 791, nn. 173 and 256 (1966), referring to abnormal use. The charge found valid in *McDevitt* referred to misuse in terms of using the wrong size tires in violation of written specifications revealed to the plaintiff, and over and under-inflation of tires in violation of published manuals, and also in plaintiff's driving his car at excess speeds. Also the opinion refers to evidence that plaintiff drove his car over rough terrain.

## 3. Evidentiary questions

■ As evidence tending to prove that one of the truck tires was on fire prior to explosion of the dynamite, the court admitted under the res gestae doctrine the testimony of a surviving plaintiff describing a statement by a decedent uttered shortly before the dynamite went off. This was not error. Under Texas law, Hartford Accident & Indemnity Co. v. Hale, 400 S.W.2d 310 (Tex.1966); Truck Insurance Exchange v. Michling, 364 S.W.2d 172 (Tex.1963), it must be shown that the excited utterance was a spontaneous reaction to an exciting event, and there must be independent proof that the exciting event occurred. There was independent evidence to support a jury finding on this issue.

■ The dealership contract between Apache and Mrs. Randol was admissible. In fact, it was essential on the issue of whether Apache could be vicariously liable for the actual sale, by Mrs. Randol in Texas, of over-age dynamite.

■ The court erred in allowing oral testimony of the contents of official records of the Canadian government. Chambless v. Woods, 182 F.2d 342 (5th Cir. 1950). The DuPont safety manual was properly admitted because used to show long-standing common knowledge in the industry. Cf. Robey v. Sun Record Co., 242 F.2d 684 (5th Cir.), cert. denied, 355 U.S. 816, 78 S.Ct. 20, 2 L.Ed.2d 33 (1957).

■ One of plaintiffs' grounds of alleged negligence was that Apache failed to send out field representatives to demonstrate to users the dangers of dynamite, expecially over-age dynamite. As evidence of whether Apache exercised due care plaintiffs offered the testimony of experts as to the custom of explosives manufacturers in Canada to send representatives out to see how their dynamite was being used and to offer advice on the use and care of explosives. We are of the opinion that the Canadian custom was not admissible. To be relevant a custom must be "reasonably

brought home to the actor's locality," Prosser, Torts, § 33 at 171 (3d ed. 1964), and must be so general or well known that the actor may be charged with knowledge of it or with negligence in not knowing of it. *Id.* Recognizing that the "locality" for an Arizona dynamite manufacturer may extend further than Arizona, we are not able to say that the custom of manufacturers in another country, thousands of miles away, where trade practices may be different, and which may be served by different trade associations and different publications, is either "brought home" to the Arizona manufacturer or so general that he should know of it. Cf. Walgreen-Texas Co. v. Shivers, 169 S.W.2d 271 (Tex.Civ.App.1943), holding that on the issue of construction of a soda fountain in Beaumont, Texas, testimony of the construction of soda fountains in California was inadmissible because it "related to Southern California and not to Beaumont and East Texas." This is not to say that the evidence is not susceptible of being admitted with a proper predicate.

The trial judge did not abuse his allowable discretion in refusing to allow impeachment of a witness by showing he had been convicted on "hot check" charges more than five years previously. 62 Tex.Jur.2d, Witnesses, § 281 at 265–66 (1965).

Prohibiting defendant from introducing prior pleadings and cross-examining one of the plaintiffs about them was error. "[A]bandoned pleadings * * * are properly admissible as ordinary declarations or admissions against interest," 24 Tex.Jur.2d, Evidence, § 631 at 208 (1961), and are not limited, as plaintiffs contend, to use to impeach a party who has testified inconsistently with the allegations in the abandoned pleadings. Hartford Accident and Indemnity Co. v. McCardell, 369 S.W.2d 331 (Tex.1963).

Reversed and remanded.

---

ON PETITION FOR REHEARING AND PETITION FOR REHEARING EN BANC

PER CURIAM:

The Petition for Rehearing is denied and no member of this panel nor Judge in regular active service on the Court having requested that the Court be polled on rehearing en banc, (Rule 35 Federal Rules of Appellate Procedure; Local Fifth Circuit Rule 12) the Petition for Rehearing En Banc is denied.